UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**RICHARD LEBLANC,**

             **Plaintiff,**

**v.**                                          **Case No:  6:12-cv-1235-Orl-41TBS**

**USG7, LLC and USDS, LLC,**

             **Defendants.**

_____/

**ORDER**

THIS CAUSE is before the Court on Plaintiffs' Renewed Motion for Final Default Judgment ("Motion for Default," Doc. 90). For the reasons set forth herein, Plaintiffs' Motion for Default will be granted in part.

## I.    BACKGROUND

Plaintiff Richard Leblanc brings this Collective Action against Defendants  USG7, LLC ("USG7") and USDS, LLC ("USDS") and former Defendant Mike Keen alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Florida Constitution. (Second Am. Compl., Doc. 67, ¶¶ 64–75). Plaintiffs Leblanc, Warren Willets, and Jason Pietarila (collectively, "Plaintiffs") also filed Consent to Join Collective/Class Action Notices. (Doc. Nos. 67-1–67-3). Plaintiffs allege that while employed by Defendants they were not paid overtime wages in violation of the FLSA and were not compensated at a rate equal to the minimum wage as  required by the FLSA and article X, section 24 of the Florida Constitution. (Second Am. Compl. ¶¶ 64–71).

USG7 never made an appearance in this case or otherwise defended this litigation, and a Clerk's default (Doc. 32) was entered against USG7 on May 21, 2013. On the other hand, USDS and Keen initially appeared and filed an Answer (Doc. 26), but after their attorney withdrew in March 2014 (Doc. Nos. 49, 51), neither Defendant made any further appearances in this case. As a result of USDS's and Keen's failure to proceed in the litigation or obey Court orders, this Court struck their Answer from the record and directed the Clerk to enter a Clerk's default as to each. (Doc. 59). Clerk's defaults were entered against USDS and Keen on September 8, 2014.  (Doc. Nos. 60, 61). Accordingly, Plaintiffs moved for the entry of default judgment against all Defendants. (Mot. for Final Default J., Doc. 64). Plaintiffs' Motion for Final Default Judgment was denied because the Amended Complaint failed to adequately allege either enterprise or individual coverage under the FLSA. (Nov. 6, 2014 Order, Doc. 65, at 4–8).

The November 6, 2014 Order granted Plaintiffs leave to amend the Amended Complaint to address the issues concerning coverage. (*Id.* at 8). Thereafter, Plaintiffs filed the Second Amended Complaint. Plaintiffs effected service of process of the Second Amended Complaint on Defendants USG7 and USDS. (*See* Dec. 5, 2014 Aff. of Serv., Doc. 72, at 1; Jan. 29, 2015 Aff. of Serv., Doc. 78, at 1). However, Plaintiffs were unable to serve the Second Amended Complaint on Defendant Keen, (*see* Pls.' Status Report, Doc. 82, at 2), and all claims against him were dismissed without prejudice, (May 15, 2015 Order, Doc. 83, at 1). Plaintiffs filed the Motion for Default seeking the entry of a final default judgment against the remaining Defendants and the award of reasonable attorneys' fees and costs.

## II. MOTION FOR DEFAULT JUDGMENT

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55 the Court may enter a default judgment upon the request of the non-defaulted party. "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact" but "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] "[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Id.* "Thus, before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint . . . actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis omitted).

In determining the sufficiency of the complaint, the court applies the same standard as is applicable to a motion to dismiss for failure to state a claim. *Osprey Special Risks Ltd. v. Ocean Ins. Mgmt., Inc.*, No. 8:10-cv-862-T-30AEP, 2011 WL 32422, at *2 (M.D. Fla. Jan. 5, 2011). Accordingly, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

---

[1] Decisions of the Fifth Circuit entered before October 1, 1981, are binding on the courts of the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Although well-pleaded facts in a complaint are deemed admitted, a plaintiff's allegations relating to the amount of damages are not admitted by virtue of default; rather, the Court must determine both the amount and character of damages." *Bently Motors Ltd. v. McEntegart*, 976 F. Supp. 2d 1297, 1321 n.4 (M.D. Fla. 2013).

**B.    Analysis**

In order to prevail on the Motion for Default, the Plaintiffs' Amended Complaint must contain allegations sufficient to establish liability under the FLSA.[2] To prove a violation of the minimum and overtime wage provisions of the FLSA, Plaintiffs must show: (1) that each was employed by Defendants during the time of the alleged violations; (2) enterprise or individual coverage under the FLSA; and (3) violations of the minimum and overtime wage requirements. 29 U.S.C. §§ 206(a), 207(a); *see also* Eleventh Circuit Civil Pattern Jury Instruction 4.14 (2013). Defendants are deemed to have admitted the first and third prongs based on the well-pleaded facts of Plaintiffs' Second Amended Complaint. (Second Am. Compl. ¶¶ 17, 23, 25, 35, 54, 58, 61–63; Pietarila Consent to Join, Doc. 67-2, ¶ 2; Willets Consent to Join, Doc. 67-3, ¶ 2).

As to the second prong, Plaintiffs have adequately alleged enterprise coverage under the FLSA. A claim for enterprise coverage requires a plaintiff to establish two elements: (1) that the

---

[2] Plaintiffs assert a claim for violation of article X, section 24 of the Florida Constitution. However, as this Court previously cautioned Plaintiffs, (*see* Nov. 6, 2014 Order at 4 n.5), failure to address liability under the state law claims will waive Plaintiffs' entitlement to relief thereunder. Plaintiffs have failed to properly request or establish entitlement to default judgment on this claim. Thus, the Court deems Plaintiffs' Florida constitutional claim abandoned. *See Taylor v. Premier Debt Sols., LLC*, No. 6:12-cv-519-Orl-22KRS, 2012 WL 4792641, at *1 n.1 (M.D. Fla. Sept. 20, 2012), *adopted*, 2012 WL 4792881 (M.D. Fla. Oct. 9, 2012).

employer or group of employers are an enterprise, and (2) that the employer-enterprise meets the requirements of 29 U.S.C. § 203(s)(1).

### 1.     Existence of an Enterprise

First, employees seeking to establish enterprise coverage must demonstrate that the employers are an "enterprise" within the meaning of the FLSA. *Martinez v. ABL Enters. II, Inc.*, No. 05-21276 Civ, 2005 WL 5560959, at *3 (S.D. Fla. Sept. 12, 2005). "'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1). "The statutory provision requires the existence of three elements: (1) related activities; (2) unified operation or common control; and (3) a common business purpose. All three elements must be present for an 'enterprise' to exist." *Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 (11th Cir. 1984).

### a.     Related Activities

"Activities are related when they are the same or similar or when they are auxiliary and service activities." *Id.* (quotation omitted). Plaintiffs have alleged that both Defendants operate "prisoner transportation service" businesses in central Florida. (Second Am. Compl. ¶¶ 14–15). This is sufficient to show that Defendants were engaged in the same or similar business activities such that the related activities element is satisfied. *See Hernandez v. Art Deco Supermarket*, No. 13-20705-CIV, 2013 WL 5532828, at *4 (S.D. Fla. Oct. 4, 2013) (holding that allegation that both defendants were supermarkets was sufficient to plead related activities at the motion to dismiss stage); *Tafalla v. All Fla. Dialysis Servs., Inc.*, No. 07-80396-CIV, 2009 WL 151159, at *9 (S.D. Fla. Jan. 21, 2009) (holding that a company that treated patients with kidney disease and the company that provided dialysis to the treating company's patients were engaged in the same or similar business).

b.       *Unified Operation or Common Control*

"To establish enterprise coverage under the [FLSA], it is incumbent upon the plaintiff to prove only one of the two alternative requirements of 'unified operation' or 'common control.'" *Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th Cir. 1977); *see also* 29 U.S.C. § 203(r)(1) ("'Enterprise' means the related activities performed (*either* through unified operation *or* common control) by any person or persons for a common business purpose." (emphasis added)). Here, Plaintiffs have adequately alleged unified operation.

The Department of Labor defines unified operation as two or more businesses "combining, uniting, or organizing their performance so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." 29 C.F.R. § 779.217. Courts consider many factors in determining if two or more entities are acting as a unified operation, such as whether the businesses: (1) maintain separate books and records; (2) intermingle funds; (3) operate under the same licenses; (4) maintain separate insurance; (5) utilize the same supplies and instruments; (6) interchange employees; and (7) utilize the same managers and supervisors. *Donovan*, 723 F.2d at 1552.

The Second Amended Complaint sets forth sufficient allegations to demonstrate unified operation of USG7 and USDS. Plaintiffs allege that they were initially hired by and worked for USG7 but were subsequently told that USDS would be their employer. (Second Am. Compl. ¶¶ 24–25, 35). Despite the nominal change in employer, Plaintiffs allege that their job duties did not change and that both companies used the same supervisors, transportation vehicles, tools and equipment, forms, and badges. (*Id.* ¶¶ 36–47). Plaintiffs further allege that payroll payments were made in the same manner and that the companies used identical credit cards, indicating that the companies were intermingling funds to at least some extent. (*Id.* ¶¶ 48–49). Thus, Plaintiffs have

pleaded that Defendants maintained at least some similar records, intermingled at least some funds, used the same supplies and equipment, and used employees and supervisors interchangeably.

Additionally, Plaintiffs have alleged that after the nominal name change, Defendant USDS utilized many implements containing USG7's logos and name. (*Id.* ¶¶ 40, 42–48). Evidence that the businesses treat themselves as "interchangeable," and fail to adequately differentiating themselves to clients can be a strong indication that the businesses are operating as a single unit. *See Cornell v. CF Ctr., LLC*, 410 F. App'x 265, 267 (11th Cir. 2011) (per curiam) (holding that evidence that multiple corporate defendants used business cards, a website, and various forms that listed multiple corporations or failed to distinguish between the corporations was functioning as a single unit for purposes of FLSA enterprise coverage). Based on the well-pleaded allegations of Plaintiffs' Second Amended Complaint, Plaintiffs have established unified operation between Defendants.

*c.*    *Common Business Purpose*

Although the FLSA has not clearly defined "common business purpose," the Eleventh Circuit has held that "[m]ore than a common goal to make a profit . . . must be shown to satisfy the requirement." *Donovan*, 723 F.2d at 1553. However, evidence that the businesses are pursuing a common business plan and intermingling funds is sufficient to show a common business purpose. *See id*; *Tafalla*, 2009 WL 151159, at *11. Plaintiffs have alleged that both Defendants utilized similar business forms and methods, used the same supervisors, and engaged in the same business of transportation of prisoners to various prison facilities. (Second Am. Compl. ¶¶ 36–39, 43–46). Furthermore, from the allegations of Plaintiffs' Second Amended Complaint one may reasonably infer that Defendants were comingling funds because they were utilizing similar payment methods for employees and were using the "same credit cards . . . with the same name and the same account

numbers." (*Id.* ¶¶ 48–49). These allegations are sufficient to show that Defendants were engaged in a common business purpose. Thus, Defendants constitute an enterprise under the FLSA for coverage purposes.

> ## 2.   *29 U.S.C. § 203(s)(1)*

To establish the second prong of enterprise coverage—that the employer-enterprise meets the requirements of 29 U.S.C. § 203(s)(1)—the employee must prove that the employer:

> 1) "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and 2) has at least $500,000 of "annual gross volume of sales made or business done."

*Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (quoting 29 U.S.C. § 203(s)(1)(A)).

Plaintiffs have established the first element. Plaintiffs allege that they traveled by "automobile" or "airplane" to transport prisoners to various facilities as part of their employment. (Second Am. Compl. ¶ 55). To determine if the use of automobiles or airplanes is sufficient to meet the first prong, the Court must determine whether these items constitute goods or materials that have been moved in interstate commerce.[3] *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1318–19 (11th Cir. 2011).

In relation to Defendants' business, automobiles and airplanes are materials. Plaintiffs allege that automobiles and airplanes were used to "transport[] inmates from one prison facility to another" and that USG7 and USDS maintain a "prisoner transportation service." (Second Am. Compl. ¶¶ 14–15, 54–55). Therefore, the automobiles and airplanes are materials because the items are tools used

---

[3] Although not specifically alleged, construing the facts in the light most favorable to Plaintiffs, the Court may safely assume that the vehicles and airplanes used by Plaintiffs were "moved in or produced for commerce."

by Defendants to conduct their business and have a significant connection to Defendants' commercial activities. *See Bautista Hernandez v. Tadala's Nursery, Inc.*, 34 F. Supp. 3d 1229, 1239–40 (S.D. Fla. 2014) (holding that trucks used to transport plants and related items for a nursery business were materials because the trucks had moved in interstate commerce and formed a substantial part of the business's commercial activity); *Polycarpe v. E&S Landscaping Serv., Inc.*, 821 F. Supp. 2d 1302, 1306–07 (S.D. Fla. 2011) (same).

Additionally, Plaintiffs have sufficiently alleged the second element. The Second Amended Complaint alleges that each Defendant grossed in excess of $500,000 annually. (Second Am. Compl. ¶¶ 19–20). Plaintiffs' assertions are adequate to meet FLSA pleading standards and, therefore, Plaintiffs have sufficiently alleged enterprise coverage with respect to Defendants. *See Dobbins v. Scriptfleet, Inc.*, No. 8:11-cv-1923-T-24-AEP, 2012 WL 601145, at *2 (M.D. Fla. Feb. 23, 2012) (holding that an allegation that the defendant had annual gross volume sales over $500,000 was sufficient to plead enterprise coverage under the FLSA). Thus, Plaintiffs have sufficiently stated a claim for violations of §§ 206(a) and 207(a) of the FLSA and are entitled to damages.

### C.    Damages

"Any employer who violates the provisions of [§] 206 or [§] 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

#### 1.    *Joint Employers*

Although the inquiry is similar in many respects, "[t]he finding of an enterprise is relevant only to the issue of coverage." *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986). Thus, in order

for USG7 and USDS to be held jointly and severally liable for violations of the FLSA, the Second Amended Complaint must set forth sufficient allegations to establish an employer-employee relationship between Plaintiffs and each business spanning the entire period of time alleged. *Id.* "To determine whether an employer[-]employee relationship exists for purposes of federal welfare legislation, [the court] look[s] . . . to the 'economic reality' of all the circumstances concerning whether the putative employee is economically dependent upon the alleged employer." *Aimable v. Long & Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994).

The Eleventh Circuit has set forth seven factors courts may consider in evaluating the subject relationship:

> [1] The nature and degree of control of the workers; [2] The degree of supervision, direct or indirect, of the work; [3] The power to determine the pay rates or the methods of payment of the workers; [4] The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; [5] Preparation of payroll and the payment of wages. . . . [6] ownership of the facilities where work occurred, and [7] performance of a specialty job integral to the business . . . [8] investment in equipment and facilities.

*Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1176 (11th Cir. 2012) (citing *Aimable*, 20 F.3d at 438–39, 443–44). Simply stated, "[t]his case-by-case inquiry turns on no formula, but the court will consider factors such as control, supervision, right to hire and fire, ownership of work facilities, investment, and pay-roll decisions." *Cornell*, 410 F. App'x at 268. No one factor is dispositive. *Layton*, 686 F.3d at 1177 (citation omitted).

Plaintiffs have not adequately alleged joint employment for liability purposes. Plaintiffs have alleged only that they were employed by USG7 prior to April 2012 and USDS thereafter. (Second Am. Compl. ¶¶ 24–25, 35). Although Plaintiffs allege that both companies utilized the same supervisors and equipment, (*see id.* ¶¶ 36–37, 40), Plaintiffs have not alleged that either company had or exercised any control over the workers of the other entity. Plaintiffs have not

alleged that one company was able to make decisions regarding the work, conditions of employment, payment of wages, or rate of pay of employees of the other company. Additionally, Plaintiffs have specifically alleged that the two companies used different facilities located in different cities in Florida. (*Id.* ¶¶ 14–15). Plaintiffs' conclusory allegations concerning common ownership and joint employment are insufficient to establish joint employment for the purposes of liability. Accordingly, Defendants will not be held jointly and severally liable for violations of the minimum wage and overtime laws; USG7 will be held liable for all damages accrued prior to April 1, 2012, and USDS will be liable for all damages thereafter.

2.      *Damages*

Having established a claim for violation of § 206 and § 207, Plaintiffs' are entitled to an award of damages. The initial burden to prove the hours worked and the deficiency of compensation lies with the employee. *Armitage v. Dolphin Plumbing & Mech., LLC*, 510 F. Supp. 2d 763, 774–75 (M.D. Fla. 2007). In FLSA cases where the employer has failed to maintain or produce adequate records, the employee may rely on sufficiently detailed affidavits to prove damages. *See Ramirez v. Raptor Tech. Grp., Inc.*, No. 5:12-cv-100-Oc-34TBS, 2012 WL 2589256, at *3 (M.D. Fla. June 8, 2012), *adopted*, 2012 WL 2586220 (M.D. Fla. July 3, 2012); *see also Etienne v. Inter-Cty. Sec. Corp.*, 173 F.3d 1372, 1375 (11th Cir. 1999) ("[W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." (quotation omitted)).

"Once the employee makes out a *prima facie* case by producing such evidence, the burden shifts to the employer 'to come forward with evidence of the precise amount of work performed

or with evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence.'" *Armitage*, 510 F. Supp. 2d at 775 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). "If the employer does not come forward with evidence of the precise amount of work performed or other evidence to negate the plaintiff's [claims], the court may award approximate damages based on the employee's evidence." *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008) (quotation omitted).

Plaintiffs have each submitted a sworn affidavit setting forth their alleged damages for both the minimum wage and overtime violations. By way of default, Defendants are deemed to admit that they failed to maintain adequate records. (Second Am. Compl. ¶ 67). Furthermore, by failing to appear and defend this case, Defendants have failed to rebut Plaintiffs' evidence. *See Wallace*, 247 F.R.D. at 682. However, Plaintiffs' Affidavits are woefully inadequate to allow the Court to estimate damages for either the minimum wage violations or the overtime violations. As to the minimum wage claims, Plaintiffs are entitled to the difference between the wages they received and $7.25 an hour.[4] 29 U.S.C. § 206(a)(1)(C). Plaintiffs' Affidavits fail to provide sufficient information for the Court to calculate damages on the minimum wage claims. Plaintiffs have not informed the Court the total amount they were paid or the total number of hours worked during the alleged periods such that the Court may calculate, based on the federal rate, the appropriate amount of minimum wage damages.

As to their overtime claims, Plaintiffs are entitled to receive one and one half times their regular hourly pay for all hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Plaintiffs have not, however, provided the Court with appropriately detailed allegations in their

---

[4] As noted above, Plaintiffs failed to address entitlement to relief on their state law claim and it has, therefore, been deemed abandoned. Accordingly, Plaintiffs are only entitled to recover wages at the federal statutory minimum wage rate.

Affidavits for the Court to determine their regular hourly rates during the specified periods of time. Thus, the Court is unable to calculate Plaintiffs' entitlement to damages with any degree of reasonable accuracy.

However, because Plaintiffs have adequately established their entitlement to an award of back wages, the Court will grant Plaintiffs leave to file supplemental damages evidence. To the extent Plaintiffs elect to file such a supplement, it should include credible evidence of (1) the total number of hours per week actually worked during the subject timeframe; (2) the total amount of wages actually paid per week; and (3) the hourly rate at which each Plaintiff was supposed to be paid. Furthermore, the evidence should differentiate between work performed while employed by USG7, i.e. work performed prior to April 1, 2012, and work performed while employed by USDS, i.e. work performed on or after April 1, 2012.

## III.   ATTORNEYS' FEES AND COSTS

Plaintiffs have moved for an award of attorneys' fees and costs simultaneously with their Motion for Default. Pursuant to 29 U.S.C. § 216(b), prevailing parties on minimum wage and overtime claims are entitled to "a reasonable attorney's fee to be paid by the defendant, and [the] costs of the action." Thus, Plaintiffs are entitled to recover a reasonable attorneys' fee and the taxable costs of this action. *See Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 802 (11th Cir. 2012) (per curium) (citing *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988) ("Though plaintiffs may, in addition to fees, recover the 'costs of the action' in [FLSA] cases, . . . [the Eleventh Circuit] has clearly held that cost recovery is limited by 28 U.S.C. § 1920.")[5]; *see also Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005)

---

[5] *Mock* was actually based on a claim under the Age Discrimination in Employment Act ("ADEA"), however 29 U.S.C. § 626(b) incorporates the FLSA's remedies pursuant to 29 U.S.C. § 216(b) into the ADEA. Therefore, the holding in *Mock* is equally applicable in FLSA cases.

("In an FLSA action, it is error for a district court to award costs in excess of those permitted by § 1920.").

However, pursuant to Local Rule 4.18 of the Middle District of Florida, "all claims for costs or attorney's fees . . . shall be asserted by separate motion or petition filed not later than fourteen (14) days following the entry of judgment." Accordingly, it was improper for Plaintiffs to move for the award of such costs and fees concurrently with their Motion for Default. To the extent Plaintiffs' seek an award of costs and fees that relief will be denied without prejudice. Plaintiffs may refile their motion as appropriate after judgment has been entered.

## IV.   CONCLUSION

In accordance with the foregoing, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Plaintiffs' Renewed Motion for Final Default Judgment (Doc. 90) is **GRANTED in part**. To the extent Plaintiffs' seek the entry of a default judgment against Defendants USG7, LLC and USDS, LLC, the Motion is granted. In all other respects, the Motion is denied without prejudice.

2. Plaintiffs may submit supplemental damages evidence **on or before Monday, August 17, 2015**. Failure to do so will result in the entry of a judgment for zero dollars on all claims.

**DONE** and **ORDERED** in Orlando, Florida on August 3, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record